## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL BLOSSER,** | : | **Civil No. 4:14-CV-1308** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| Acting Commissioner of | : | |
| Social Security | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

This is an action brought under 42 U.S.C. 405(g) and 42 U.S.C. §1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security's final decision denying Plaintiff Michael Blosser's applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Docs. 17, 18).

This case involves a function that is integral to the role of the ALJ: The resolution of a factual dispute regarding the degree to which diagnostic testing supported a plaintiff's claim of total disability. In this case, Plaintiff suffers from a

number of physical impairments, chief among them severe lower back pain which radiates down his left leg.  The credibility of his complaints of pain are supported to some degree by diagnostic imaging which confirms some physical abnormality at the L4/L5 and L5/S1 levels of his spine.  Plaintiff contends that this MRI, which documents the presence of a central disc protrusion at L4/L5 encroaching upon the thecal sac and a broad based disc protrusion at L5/S1 encroaching upon the thecal sac and left-sided neural foramina, establishes that Plaintiff suffers from a greater degree of limitation than found by the ALJ and demonstrates the requisite nerve root compromise and compression to meet Listing 1.04A.  The Commissioner disagrees and asserts that a disc bulge encroaching upon the thecal sac and left-sided neural foramina is not the same as nerve root compromise or compression.  In the Commissioner's view, therefore, substantial evidence supports the ALJ's determination that the Plaintiff was able to engage in a limited range of sedentary work.  This disagreement forms the basis for Plaintiff's argument for reversal, or remand.

For the reasons stated herein, we have found that the final decision of the Commissioner is supported by substantial evidence.  As such, we **AFFIRM** the decision of the Commissioner denying Plaintiff's applications for benefits, and

**DENY** Plaintiff's request for the award of benefits, or remand for a new administrative hearing.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff protectively filed applications for benefits under Titles II and XVI of the Social Security Act alleging that he is unable to work due to a combination of back problems, problems with both ankles, knee problems, and cardiac difficulties. (Admin Tr. 185).  He initially alleged that his conditions rendered him completely disabled on July 15, 2009. (Admin Tr. 181).  He later amended his alleged onset date to August 3, 2011, the date of the earliest medical record in his file.[1]  (Admin Tr. 41-42).

Plaintiff lives by himself in a house, has a tenth grade education, and partially supports himself by working "odd jobs" that net him approximately three hundred dollars per month since being laid off in 2009; he testified that he works an estimated eight hours per month.  Plaintiff reported no difficulty caring for himself, that he cooks simple meals with breaks to sit down, and does dishes, laundry, grocery

---

[1]Plaintiff reported that he had no insurance going back to 2006, and, therefore, had little or no medical treatment prior to the consultative examination commissioned by the Social Security Administration.

shopping, vacuuming, sweeping, maintains his yard, and takes out the trash.[2] Plaintiff testified that, as a result of his impairments he could not bend down and touch his toes but can squat down to pick up objects from the floor. He reported that he cannot climb ladders, but can climb stairs while using a railing for balance. According to the Plaintiff, he can walk a half-mile before he needs to sit down due to lower back pain, can stand for ten minutes before he needs to sit, and can sit up to thirty minutes before he needs to stand or change positions. Plaintiff takes a combination of Vicodin and ibuprofen to manage his pain. Plaintiff testified that he takes up to five half-hour naps per day due to fatigue. Plaintiff asserted that he is always fatigued, and believes that his symptoms of pain and fatigue may be causally related.

---

[2]Plaintiff testified that, when doing laundry, he is only able to lift a few articles of clothing at one time. Similarly, when he takes out his trash he puts his trash in small, lightweight bags so that he can carry them.

Plaintiff's claims were initially denied on August 23, 2011.[3]  On October 26, 2011, Plaintiff filed a written request for a hearing.  His request was granted, and on December 4, 2012, he was given the opportunity to appear and testify, with the assistance of counsel, during an administrative hearing before an Administrative Law Judge ("ALJ") in Harrisburg, Pennsylvania.  Impartial Vocational Expert ("VE") Andrew Caporale also appeared and testified during Plaintiff's hearing.

Following his hearing, the ALJ denied Plaintiff's claims in a written decision dated December 18. 2012.  Thereafter Plaintiff sought review of the ALJ's decision by the Appeals Council.  Together with his request for review, Plaintiff submitted new medical evidence that was not before the ALJ when he rendered his decision.

---

[3]The initial denial of Plaintiff's claims was informally remanded after Plaintiff requested an administrative hearing.  (Admin Tr. 98-99); see also 20 C.F.R. §§404.941, 416.1441 ("After a hearing is requested but before it is held, we may, for the purposes of a prehearing case review, forward the case to the component of our office (including a State agency) that issued the determination being reviewed.  That component will decide whether it should revise the determination based on the preponderance of the evidence.").  Generally, a case is informally remanded only if there is a reason to believe that newly submitted evidence or a change in the law or regulation would result in a more favorable determination.  See 20 C.F.R. §§404.941, 404.948, 416.1441, 416.1448.  Plaintiff's claims were reviewed during this process and medical consultant Luis M. Zuniga, M.D., opined that the only evidence of record suggested that Plaintiff's obesity, degenerative disc disease, and possible degenerative joint disease were non-severe and that Plaintiff's alleged impairment due to coronary artery disease was not medically determinable. (Admin Tr. 275).  As such, on informal remand it was determined that a review of the medical evidence did not warrant a fully favorable determination.  (Admin Tr. 276).

5

(Admin Tr. 8-22).  The Appeals Council denied Plaintiff's request for review, and concluded that the new evidence submitted by Plaintiff did not relate to the period of time addressed by the ALJ in his decision.  (Admin Tr. 2).  Plaintiff does not allege that remand is appropriate pursuant to sentence six of 42 U.S.C. §405(g).  Therefore, we have not considered this evidence in our review of Plaintiff's claims.

On August 3, 2011, Plaintiff was examined by Dr. Vandegriff at the request of the Social Security Administration.  (Admin Tr. 266-74).  During his examination, Dr. Vandegriff ordered an x-ray of Plaintiff's lumbar spine.  The x-ray revealed mild degenerative joint disease at L3, L4, and L5, and the vague suggestion of a bony defect in the area of the pars intra-articular sub L5 suggesting spondylolysis without spondylolisthesis.[4]  Dr. Vandegriff noted that Plaintiff ambulated to and from the examination room on his own and with a normal gait, during the examination he was able to move all extremities without difficulty, exhibited normal reflexes, and had a normal range of motion in all areas tested.  Based on his x-ray and examination findings, Dr. Vandegriff diagnosed obesity, a history of myocardial infarction in 2005

---

[4] Spondylolysis is defined as the dissolution of a vertebra, where as spondylolisthesis is the forward displacement of one vertebra over another. Dorland's Illustrated Medical Dictionary 1754 (32nd ed. 2012).

(by Plaintiff's report),[5] and lumbar pain with spondylolysis.   Based on these diagnostic impressions, Dr. Vandegriff opined that Plaintiff could: frequently lift or carry up to ten pounds, occasionally lift or carry up to twenty pounds, and push or pull within these weight restrictions without limitation; stand and walk up to four hours per eight-hour workday; sit without limitation; occasionally bend or kneel; never stoop, crouch, balance, or climb; and reach, handle, finger, feel, see, hear, speak, taste, and smell without restriction.   Dr. Vandegriff also noted that Plaintiff should avoid exposure to unprotected heights in the workplace.

On December 27, 2011, Plaintiff was examined by Dr. Mark Stutzman at the Sadler Health Clinic for the first time with complaints of a possible umbilical hernia, and left hip pain that radiated down his leg.   (Admin Tr. 336).  Dr. Stutzman confirmed the presence of a 1-2 cm umbilical hernia but did not recommend any treatment.  (Admin Tr. 338).   He also noted that Plaintiff's straight leg raise test was negative on the left side.   Id.   Dr. Stutzman prescribed Vicodin and Tramadol for the pain, and medications to treat his coronary artery disease.

_____

[5]Subsequent to Dr. Vandegriff's examination, Plaintiff submitted records from a July 2005 hospitalization due to an acute myocardial infarction.  (Admin Tr. 285-320).  These records also reflect that Plaintiff was diagnosed with coronary artery disease.  Id.

7

On February 2, 2012, Plaintiff was examined by Dr. Stutzman to establish care. Plaintiff reported persistent back pain and numbness in his left leg. On examination Dr. Stutzman noted that Plaintiff had a negative straight leg raise test, but was positive for decreased sensation in his lower left extremity. (Admin Tr. 334). Dr. Stutzman continued Plaintiff on the same medications.

On March 12, 2012, Plaintiff was examined by Dr. Stutzman. Plaintiff reported that he was "overall worse, but was better with activity (bicycling)" and that the numbness in his left foot was better, but became worse with prolonged sitting and standing. (Admin Tr. 332). On the same date, Plaintiff's straight leg raise test was negative and his sensation was normal. Id. Dr. Stutzman noted that Plaintiff was "temporarily disabled given degree of functional impairment." (Admin Tr. 333). Dr. Stutzman continued Plaintiff on the same medications.

On May 14, 2012, Plaintiff was examined by Dr. Stutzman. Dr. Stutzman noted that Plaintiff's straight leg raise was negative on the left side, but that Plaintiff did have decreased sensation in his lower left extremity. (Admin Tr. 330). Dr. Stutzman continued Plaintiff on the same medications.

On September 9, 2012, Plaintiff was examined by Dr. Stutzman with complaints of lower back pain that had been present since 2012, he described the pain as aching, aggravated by physical activity, and relieved by rest and medication.

Plaintiff also reported that he experienced numbness down his left leg, muscle weakness secondary to pain, and neck pain present for one month.  On physical examination, Plaintiff exhibited decreased lumbar lordosis, increased thoracic kyphosis, limited forward bending due to pain, had a positive straight leg raising test on the left.  Left toe dorsiflexion was +4/5, and plantar flexion was +5/5.  Dr. Stutzman assessed coronary artery disease, hypertension (controlled), hyperlipidemia, sciatica of the left side, and neck pain.  He increased Plaintiff's Vicodin dosage, prescribed a muscle relaxer for Plaintiff's neck, and recommended that Plaintiff continue taking his normal doses of Plavix, Torpol, and Lipitor.

On September 18, 2012, Plaintiff had an MRI of his lumbar spine.  The MRI revealed leftward disc protrusions at L4/L5 and L5/S1 with no significant central canal encroachment, there was some left sided neural foraminal encroachment of the thecal sac at L4/L5 and L5/S1.  (Admin Tr. 347).

On October 3, 2012, Plaintiff returned to Dr. Stutzman to follow up on a recent MRI, and to review lab work.  Although Plaintiff reported that the increased dose of Vicodin seemed to help, it was recommended that he undergo steroid injections and he was referred to the Carlisle Pain Management Center.  During this examination Dr. Stutzman noted that plaintiff's gait was "slightly limping."

On October 11, 2012, Plaintiff was examined by Dr. Salah Eldin Eldohiri at the Carlisle Regional Medical Center.   On physical exam Dr. Eldohiri noted that Plaintiff's lower left extremity showed significantly diminished sensation to light touch, left toe dorsiflexion (3/5), plantar dorsiflexion (4/5), antalgic gait, and brownish discoloration of both lower extremities suggestive of venous congestion or vascular disease.   Plaintiff's lumbar spine was good with flexion and side-bending, but Plaintiff's lumbar extension was limited secondary to pain, his left sacroiliac joint was tender to palpation, and his straight leg test was positive on the left side.   Based on his observations during the examination, and the September 2012 MRI report, Dr. Eldohiri reported the impression of low back pain, herniated nucleus polyposis, left lower extremity radiculopathy, left sacroiliac joint arthropathy, and new onset of weakness and numbness of the left lower extremity.

On October 25, 2012, Plaintiff was treated with three lumbar interlaminar epidural steroid injections.   Plaintiff tolerated the procedure with no complications. At his hearing he testified that these injections were not effective, and that he was returning in late December 2012 to try one injection – rather than three.

It is against the backdrop of this equivocal medical evidence regarding

Blosser's spinal condition that we consider Blosser's appeal.[6]

---

[6]     After Plaintiff's ALJ hearing, but before the ALJ issued his decision, Plaintiff submitted his 20 year old school records and presented an issue relating to Blosser's intellectual functioning.  During the hearing, Plaintiff's counsel suggested that these records were necessary to illustrate that Plaintiff had not attained a high school degree.  Indeed, these records do reflect that Plaintiff withdrew from high school in October of his eleventh grade year.  (Admin Tr. 350).  The reason for withdrawal cited was "age"; Plaintiff celebrated his eighteenth birthday four months prior to his withdrawal from school.  Id.  His performance in school was very weak. In this appeal, Plaintiff points out that during the course of some standardized aptitude testing, several IQ scores were generated.  In sixth grade, it was noted that Plaintiff's language IQ was 65, his non language IQ was 80, and his total IQ was 71. In seventh grade, Plaintiff's language IQ was 86, his non language IQ was 101 and his total IQ was 92.  In eighth grade, Plaintiff's language IQ was 62, his non language IQ was 86, and his total IQ was 73. Plaintiff argues that the ALJ failed to include any medical limitations based on Plaintiff's low language IQ score of 62 from eighth grade standardized testing.  He also asserts that, there is sufficient evidence to show that listing 12.05C is met.  Listing 12.05C provides, the required level of severity for a listing level intellectual disability is met when the claimant demonstrates "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment posing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1 §12.05C.  However, the listing of impairments also provides that the IQ scores in 12.05 reflect values from tests of general intelligence that have a mean of 100 and a standard deviation of 15.  See 20 C.F.R. Part 404, Subpart P, Appendix 1 §12.00D6c.  The records provided are insufficient to determine whether these scores correlate to this scale.  There is no accompanying narrative report in the file from the test administrator as to whether these scores are considered valid or consistent with Plaintiff's developmental history. See 20 C.F.R. Part 404 Subpart P, Appendix 1 §12.00D6a.  Furthermore, as noted by the Commissioner, and as evinced by the wide variation in Plaintiff's scores over a period of three years, at the time Plaintiff took these tests (at ages 12, 13, and 14) his IQ had not yet stabilized.   See 20 C.F.R. Part 404, Subpart P, Appendix 1 §112.00D10 ("Generally IQ tests tend to stabilize by the age of 16.").  Thus, there is no reasonable basis upon which a decision-maker could conclude that these scores

## II.   DISCUSSION

### A.   STANDARDS OF REVIEW–THE ROLES OF THE ADMINISTRATIVE LAW JUDGE AND THIS COURT

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators – the ALJ and this court.  At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a).

---

accurately reflected Plaintiff's IQ as of his alleged onset date.  Last, at no point during the eighteen months between the date he filed his applications and the date the ALJ issued her decision, did Plaintiff allege that he suffered from any cognitive limitation that would prevent him from engaging in the unskilled occupations identified by the VE, and no treating source noted that Plaintiff appeared to have any cognitive deficit.

Given the lack of reliability of this data, the lack of allegations concerning any mental impairment, and the lack of any other correlating medical or other evidence, even *assuming arguendo* that the ALJ erred by failing to discuss this evidence, there is no possibility that further consideration of this evidence would affect the outcome of this case.  As such, assuming this was an error, it is harmless.

To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). Additionally, to receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this framework, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520, 416.920. Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of

Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1545, 416.945.  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545, 416.945.

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work.  42 U.S.C. §423(d)(5); 42 U.S.C. §1382c(a)(3)(H)(incorporating 42 U.S.C. §423(d)(5) by reference);  20 C.F.R. §§404.1512, 416.912; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). When this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

Once a final decision is issued by the Commissioner, and that decision is appealed to this court, our review of the Commissioner's final decision is limited to determining whether the findings of the final decision maker – the ALJ in this case – are supported by substantial evidence in the record as it was developed before that decision maker.   See  42  U.S.C.  §405(g)(sentence  five);  42  U.S.C.

§1383(c)(3)(incorporating 42 U.S.C. §405(g) by reference); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200(3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536(M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-

CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that

an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted);

Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's

determination as to the status of a claim requires the correct application of the law to

the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that

the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he

court has plenary review of all legal issues . . . .").

Among other things, Plaintiff has raised arguments relating to the sufficiency

of the ALJ's evaluation of whether Plaintiff meets a listing at step three, and the

extent to which Plaintiff's allegations relating to the intensity, persistence, and

limiting effects of his symptoms should be accepted as true.  Like the scope of this

court's review, the ALJ's analysis of these issues is governed by certain clear, and

clearly established standards, which we have articulated below.

  1. GUIDELINES FOR THE ASSESSMENT OF WHETHER A CLAIMANT
    MEETS THE SEVERITY OF ONE OF THE IMPAIRMENTS LISTED IN 20
    C.F.R. PART 404, SUBPART P, APPENDIX 1

A step three of the evaluation process, the ALJ must determine whether a

claimant's alleged impairment is equivalent to a number of listed impairments that are

acknowledged as so severe as to preclude substantial gainful activity.  20 C.F.R.

§§404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, Appendix 1;

Burnett, 220 F.3d 112, 119.  In making this determination, the ALJ is guided by several basic principles set forth by the social security regulations, and case law. First, if a claimant's impairment meets or equals one of the listed impairments, the claimant is considered disabled per se, and is awarded benefits.   20 C.F.R. §§404.1520(d), 416.920(d); Burnett, 220 F.3d at 119.   However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, Plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990); 20 C.F.R. §416.920(d).   An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient.  Id.

  2. GUIDELINES FOR THE ASSESSMENT OF THE CREDIBILITY OF A CLAIMANT'S ALLEGATIONS ABOUT HIS SYMPTOMS AND THEIR LIMITING EFFECTS

  An ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness' demeanor and credibility.  Frazier v. Apfel, No. 99-CV-715, 2000 WL 288246, at *9(E.D. Pa. Mar. 7, 2000)(quoting Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531(6th Cir. 1997)).  Furthermore, in making a finding about the credibility of a claimant's statements, the ALJ need not totally accept or totally reject the

individual's statements. SSR 96-7p, 1996 WL 374186. The ALJ may find all, some, or none of the claimant's allegations to be credible, or may find a claimant's statements about the extent of his or her functional limitations to be credible but not to the degree alleged. Id.

Notwithstanding the degree of deference to which an ALJ's credibility determinations are entitled, the ALJ's assessment of a claimant's credibility is governed by certain well-established principles. The ALJ must consider "all of the available evidence," including the claimant's medical history, signs and laboratory findings, the claimant's statements, and any opinions offered by medical and nonmedical sources, when assessing the intensity and persistence of a claimant's symptoms. 20 C.F.R. §§404.1529(c)(1), 416.929(c)(1). The Social Security Administration has also recognized that sometimes an individual's symptoms suggest a greater level of severity than can be shown by objective medical evidence alone. SSR 96-7p, 1997 WL 374186 at *3. As such, the Social Security Administration has developed a list of factors that the ALJ must consider in addition to the objective medical evidence when assessing the credibility of a claimant's statements about his or her symptoms, including: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; the type, dosage, effectiveness, and side effects of any medications; treatment, other than medication; any measures

other than treatment that the individual uses to relieve his or her symptoms; and any other factors concerning the claimant's limitations and restrictions.  See 20 C.F.R. §§404.1529(c)(3), 416.929(c)(3).

   B.   THE ALJ'S DECISION DENYING PLAINTIFF'S CLAIMS

   In his decision denying Plaintiff's applications for benefits, the ALJ determined that Plaintiff met the insured status requirements of Title II of the Act through March 31, 2013, then proceeded through each step of the five-step sequential evaluation process.  At step one the ALJ found that Plaintiff's infrequent work did not constitute substantial gainful activity, and that Plaintiff had not engaged in any work that rose to the level of substantial gainful activity between his amended alleged onset date and the date of his decision.  (Admin Tr. 29).  At step two, the ALJ found that Plaintiff had medically determinable severe impairments of lumbar pain with spondylolysis, coronary artery disease, and obesity.  Id.  At step three, the ALJ found that Plaintiff did not have an impairment, or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Admin Tr. 29-30).

   Before proceeding to step four the ALJ assessed Plaintiff's RFC.  In doing so, the ALJ was required to consider all of Plaintiff's alleged symptoms and the extent to which these symptoms could reasonably be accepted as true when considered

19

together with the record as a whole based on the requirements of 20 C.F.R. §§404.1529 and 416.929, and Social Security Rulings ("SSRs") 96-4p and 96-7p. The ALJ was also required to weigh the credibility of medical and other opinion evidence of record in accordance with the requirements of 20 C.F.R. §§404.1527 and 416.927, and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.   After considering the entire record, the ALJ found that Plaintiff retained the RFC to engage in sedentary work as defined in 20 C.F.R. §§404.1567(a) and 416.967(a), except that:

> he must be able to alternate between sitting and standing at will.  The claimant is limited to occasional climbing of stairs, kneeling and bending.  He should never climb ladders, stoop, balance or crouch. Moreover, the claimant must avoid concentrated exposure to heights.

(Admin Tr. 30).

At step four the ALJ assessed Plaintiff's ability to engage in his past relevant work as a laborer, tire builder, and packager.  The VE classified all of Plaintiff's past relevant work as medium, heavy, or very heavy.  Based on this testimony, the ALJ concluded that Plaintiff's past relevant work exceeded his current RFC, and concluded that Plaintiff was unable to engage in any of his past relevant work. (Admin Tr. 32).

At step five, the ALJ assessed Plaintiff's ability to engage in "other work," based on the consideration of the above RFC and the additional vocational factors of

Plaintiff's age, education, and work experience.  The VE testified that a hypothetical individual with the same vocational characteristics and RFC as Plaintiff would be able engage in the representative occupations of food and beverage order clerk (DOT #209.567-014), final assembler (DOT# 713.687-018), and call out operator (DOT #237.367-014).  Adopting this testimony, the ALJ concluded that Plaintiff could adjust to other work.  (Admin Tr. 32-33).  The ALJ also found that the other work that Plaintiff could engage in existed in significant numbers in the national economy based on the VE's testimony concerning the number positions that exists within each occupation he identified.  Id.

C.   THE ALJ DID NOT ERR AT STEP THREE OF THE SEQUENTIAL EVALUATION PROCESS

Plaintiff first argues that the ALJ erred at step three of the sequential evaluation process.  He does not assert that the ALJ failed to *consider* the evidence relevant to this listing, instead he contends that the ALJ misinterpreted it.  Specifically he asserts that the ALJ's determination that Plaintiff does not meet Listing 1.04 is not supported by substantial evidence and contends that MRI evidence of disc bulges encroaching upon his thecal sac and left-sided neural foramina illustrate compromise and compression of a nerve root.  The Commissioner disagrees, and asserts that the ALJ

reasonably concluded that MRI evidence of left-sided foraminal encroachment does not demonstrate compression or compromise of Plaintiff's nerve root.

Listing 1.04 addresses disorders of the spine, thus to fall under the definition of this listing a claimant must have a disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), *resulting in compromise of the nerve root or the spinal cord*. 20 C.F.R. Part 404, Subpart P, Appendix 1 §1.04. For a disorder of the spine to meet listing level severity, the claimant must meet the definition of this Listing, and demonstrate the presence of either A, B, or C criteria. Plaintiff suggests that he meets Listing 1.04A. To meet the "A" criteria of Listing 1.04, a claimant must demonstrate:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1 §1.04A.

In his decision, the ALJ's discussion of Listing 1.04 is limited to the following sentence: "Listing 1.04 is not met or equaled as the claimant does not have a disorder of the spine resulting in compromise of a nerve root or the spinal cord." (Admin Tr. 30). Thus, the ALJ did not reach the issue of whether Plaintiff met the severity

criteria of Listing 1.04, finding instead that Plaintiff's impairment did not meet the definition of the Listing itself.

In support of his allegations that he meets listing 1.04, Plaintiff relies primarily upon a September 2012 MRI. The MRI results are as follows:

> There are protruded discs at L4/5 and L5/S1. At L5/5 there is a central disc protrusion which encroaches upon the anterior aspect of the thecal sac. This does appear to lateralize towards the left and may encroach upon the left sided neural foramina at this level. At L5/S1 there is a broad based disc protrusion. Protruded disc material extends slightly cranially and is also asymmetric towards the left. This encroaches upon the thecal sac and left sided neural foramina at L5/S1.

(Admin Tr. 347). There is no medical opinion or other medical evidence of record that suggest that the encroachment upon the thecal sac and left sided neural foramina noted on the MRI are medically equivalent to nerve root compromise or compression. See e.g. Hamilton v. Colvin, No. 13-CV-516S, 2014 WL 2945799 at *3 (W.D.N.Y. June 30, 2014)("the two ailments – deformity of the thecal sac and nerve root compression – are not one in the same.")(citing McKenna v. Apfel, 246 F.3d 675 (9th Cir. 2000)). Thus it was reasonable for the ALJ to conclude that there is no evidence of nerve root compression, and his decision that Plaintiff did not meet Listing 1.04 is supported by substantial evidence.[7] Furthermore, reviewing the record as a whole,

---

[7]Plaintiff also asserts that the ALJ failed to properly apply the treating physician rule to the opinions of Dr. Stutzman and Dr. Eldohiri. Plaintiff suggests that the doctors' separate observations that Plaintiff had a positive straight leg raise

we find that although some evidence supports Plaintiff's claim that he meets *some* of

the necessary criteria of Listing 1.04A, there is no evidence that Plaintiff experienced

the necessary motor loss with sensory or reflex less. Since Plaintiff bears the burden

of presenting "medical findings equivalent in severity to *all* the criteria for the one

most similar impairment." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 531 (1990); 20 C.F.R.

§416.920(d). An impairment, no matter how severe, that meets or equals only some

of the criteria for a listed impairment is not sufficient. <u>Id.</u> In this case, the record

does not establish that Plaintiff has met all of the necessary criteria. Plaintiff himself

only asserts that the record establishes nerve root compression and a positive straight

leg raise, and does not address whether he meets *all* of the criteria of Listing 1.04A.

Therefore, this claim fails.

---

test is a medical opinion. (Doc. 13 pp. 8-9). 20 C.F.R. §§ 404.1527(a)(2) and
416.927(a)(2) define medical opinions as "statements from physicians and
psychologist or other acceptable medical sources that reflect judgments about the
nature and severity of [the claimant's] impairment(s), including symptoms, diagnosis
and prognosis, and what [the claimant] can still do despite impairments(s), and [the
claimant's] physical restrictions." By contrast, 20 C.F.R. §§404.1528(b) and
416.928(b) define medical "signs" as "anatomical, physiological, or psychological
abnormalities which can be observed apart from [a claimant's] statements
(symptoms)." The result of a straight leg raise test does not necessarily reflect a
clinician's medical judgment about the nature and severity of a claimant's
impairments, instead it is an objective basis considered by a clinician when
formulating his or her medical judgment. As such we find that it is a "sign" rather
than a "medical opinion," and the treating physician rule does not apply to this
description of medical "signs."

D.    The ALJ's Step Five Determination is Supported by Substantial
       Evidence

Plaintiff asserts that, even assuming *arguendo* that the ALJ's RFC is correct,

the ALJ's RFC assessment precludes a finding that Plaintiff is able to adjust to other

work. (Doc. 13 p. 9-11). Specifically, Plaintiff contends that the ALJ's finding that

he could never stoop precludes the performance of sedentary work under SSR 96-9p.

1996 WL 374185. In response the Commissioner asserts that the ALJ's findings at

step five are supported by the testimony of a VE, and that the fact that no stooping is

required of these positions is consistent with the DOT. (Doc. 14 pp. 17-19).

SSR 96-6p is a policy interpretation ruling published by the Social Security

Administration on determining the implications of an RFC for less than a full range

of sedentary work on a claimant's ability to adjust to other work. This ruling

provides that:

> An ability to stoop occasionally; i.e., from very little up to one-third of
> the time, is required in most unskilled sedentary occupations. A
> *complete* inability to stoop would significantly erode the unskilled
> sedentary occupational base and a finding that the individual is disabled
> would usually apply, but restriction to occasional stopping should, by
> itself, only minimally erode the unskilled occupational base of sedentary
> work. Consultation with a vocational resource may be particularly
> useful for cases where the individual is limited to less than occasional
> stooping.

SSR 96-9p, 1996 WL 374185 at *8 (*emphasis in original*). Plaintiff contends that

because the ALJ found that Plaintiff should "never" stoop in his RFC assessment, this ruling requires a finding of disability.[8]  (Doc. 13 p. 10).  He also contends that the complete inability to stoop precludes the performance of the occupations identified by the VE, thus rendering the ALJ's determination at step five unsupported.  Id.  We find that this argument lacks merit.

First, contrary to Plaintiff's assertion, the language of SSR 96-9p does not mandate that claimants limited to sedentary work with no stooping be found disabled. See e.g. Lauer v. Apfel, 169 F.3d 489, 493 (7th Cir. 1999)("There is no basis to assert that SSR 96-9p requires a finding of disability in cases where a claimant is unable to stoop.").  Instead, the ruling merely suggests that the ALJ consult a vocational resource where a claimant is restricted to sedentary work with anything less than "occasional" stooping; which the ALJ did in this case.  As such, we find that the ALJ fully complied with SSR 96-9p.

Second, contrary to Plaintiff's allegations, the occupations of food and beverage order clerk (DOT #209.567-014), final assembler (DOT #713.687-018), and

---

[8]The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO") defines "stooping" as "bending body downward and forward by bending spine at the waist, requiring full use of the lower extremities and back muscles."  Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix C (1993) available at WestlawNext SCODICOT.

call out operator (DOT #237.367-014) do not require any stooping.  See DICOT 209.567-014, 1991 WL 671794 (4th rev. ed., 1991)(the activity of stooping does not exist in the occupation of "order clerk, food and beverage."); DICOT 713.687-018, 1991 WL 679271 (4th rev. ed 1991)(the activity of stooping does not exist in the occupation of "final assembler."); DICOT  237.367-014, 1991 WL 672186 (4th rev. ed. 1991)(the activity of stooping does not exist in the occupation of "call-out operator.").

 E. The ALJ's Credibility Assessment Is Supported by Substantial Evidence

 Plaintiff contends that the ALJ erred by finding Plaintiff to be not credible.  He generally alleges that the ALJ failed to evaluate his credibility by considering the medical signs, laboratory findings, diagnosis, and medical opinion evidence in accordance with SSR 96-7p. (Doc. 13 pp. 12-13).  Plaintiff also asserts that the ALJ improperly discounted three aspects of Plaintiff's testimony:  the sitting, standing, and walking limitations resulting from Plaintiff's lower back and hip pain, (Admin Tr. 46); that he could "not really" bend over and touch his toes from a standing position, (Admin Tr. 45); and, that he is constantly fatigued and requires up to five short naps per day when he is at home.  (Admin Tr. 51-52, 54); (see also Doc. 13 p. 12).

With respect to Plaintiff's general assertion that the ALJ failed to evaluate his credibility by considering the medical signs, laboratory findings, diagnosis, and medical opinion evidence in accordance with SSR 96-7p, we find that his argument lacks merit. In his discussion of the evidence, the ALJ cataloged the objective findings of Plaintiff's treating doctors (positive straight leg raise, antalgic gait, range of motion testing), diagnostic imaging reports (September 2012 MRI), treatment recommendations (steroid injections), and Plaintiff's diagnosis (lumbar pain with spondylolysis and radicular pain in the lower left extremity), and found that it failed to support the full measure of Plaintiff's subjective complaints. (See Admin Tr. 31). This analysis is in accordance with the mandates outlined in SSR 96-7p, and 20 C.F.R. §§404.1529 and 416.929.

With respect to Plaintiff's more specific objections, we similarly find that his arguments lack merit.

Plaintiff testified that if he stands for more than ten minutes his back aches, and he needs to sit down to alleviate his pain. (Admin Tr. 46). Plaintiff also testified that he cannot sit for more than one half hour at a time before he experiences similar discomfort. (Admin Tr. 46-47). In his RFC assessment, the ALJ limited Plaintiff to sedentary work, subject to certain additional limitations. One of these additional limitations was that Plaintiff must be permitted to sit and stand "at will." (Admin Tr.

28

30).   The ALJ only discredited Plaintiff's testimony to the extent that it was "inconsistent" with his RFC.  This particular aspect of Plaintiff's testimony is entirely consistent with the ALJ's RFC limiting Plaintiff to sedentary work with a sit/stand option.  As such, we find that Plaintiff's argument that the ALJ improperly discounted this testimony lacks merit.

During Plaintiff's administrative hearing, the ALJ asked Plaintiff whether he could bend down and touch his toes, Plaintiff replied "not really."  (Admin Tr. 45). Although Plaintiff's testimony, at first glance, appears to be at odds with an RFC assessment that permits "occasional" bending, we find that the act of bending at the waist to touch the toes is more akin to the occupational definition of "stooping" as it is defined by the <u>Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles</u>.  As discussed above, "stooping" is defined as "bending body downward and forward by bending spine at the waist, requiring full use of the lower extremities and back muscles."   <u>Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles</u>, Appendix C (1993) *available at* WestlawNext SCODICOT.  In his RFC assessment, the ALJ limited Plaintiff to no stooping.  Thus, it appears that the ALJ also credited this aspect of Plaintiff's testimony.  As such, we find that Plaintiff's argument lacks merit.

Last, Plaintiff contends that the ALJ erred by discounting his testimony as to the severity of his fatigue. Plaintiff testified that his fatigue was so severe that he typically took up to five half-hour naps per day. This testimony is not consistent with the ALJ's RFC, thus was not deemed credible by the ALJ. The ALJ, however, failed to engage in any meaningful explanation for discounting Plaintiff's allegation with respect to this symptoms. Nonetheless, we find that the ALJ's error in this regard is harmless. Plaintiff fails to offer any evidence that the ALJ ignored or mischaracterized, and fails to cite to any evidence that supports his testimony that his fatigue is as profound as alleged. Our own review of the record reveals none. Furthermore, as noted by the ALJ, as a general matter Plaintiff's activities of daily living are more physically demanding than one would expect from an individual as limited as Plaintiff alleges himself to be. As such, there is no reasonable possibility that remand in this case might lead to a different result. See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989)("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Accordingly, we find that Plaintiff's assertion that the ALJ erred by discounting the full extent of his fatigue lacks merit.

III.    **CONCLUSION**

Based on the foregoing, **IT IS HEREBY ORDERED THAT**:

1. The Clerk of Court shall enter judgment in favor of the Commissioner of Social Security and against Plaintiff Michael Blosser as set forth in the following paragraph.

2. The decision of the Commissioner of Social Security denying Mr. Peterson's application for benefits is **AFFIRMED**.

3. Plaintiff Michel Blosser's request for the award of benefits, or in the alternative a new administrative hearing, is **DENIED**.

4. The Clerk of Court shall close this case.

An order consistent with this memorandum shall be entered separately.

> ***S/ Martin C. Carlson***
> Martin C. Carlson
> United States Magistrate Judge

Dated: July 20, 2015

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL BLOSSER,** | : | **Civil No. 4:14-CV-1308** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| Acting Commissioner of | : | |
| Social Security | : | |
| | : | |
| **Defendant.** | : | |

## <u>ORDER</u>

In accordance with the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT**:

1.   The Clerk of Court shall enter judgment in favor of the Commissioner of Social Security and against Plaintiff Michael Blosser as set forth in the following paragraph.

2.   The decision of the Commissioner of Social Security denying Mr. Peterson's application for benefits is **AFFIRMED**.

3.   Plaintiff Michel Blosser's request for the award of benefits, or in the alternative a new administrative hearing, is **DENIED**.

4.   The Clerk of Court shall close this case.

*<u>S/ Martin C. Carlson</u>*
Martin C. Carlson
United States Magistrate Judge

Dated: July 20, 2015